IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARCUS A. BLAIR, #329604, ) | Civil Action No. 3:12-228-SB-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA DEPT. OF CORRECTION; ) | |
| GREGORY T. KNOWLIN; AND ) | |
| DOCTOR DRAGO, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, Marcus Blair, filed this action pro se on January 30, 2012.[1] He is an inmate at the Turbeville Correctional Institution ("TCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff appears to allege, pursuant to 42 U.S.C. § 1983 ("§ 1983"), that Defendants violated his constitutional rights. Defendants are SCDC, TCI Warden Gregory Knowlin ("Knowlin"), and SCDC physician Dr. Paul Drago ("Drago").[2] SCDC filed a motion to dismiss on June 1, 2012. Because Plaintiff is proceeding pro se, he was advised on June 4, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion to dismiss could result in the dismissal of his complaint. Plaintiff did not respond. On August 30, 2012, Defendants filed a motion for summary judgment. A second Roseboro order was issued on

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) and (e) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

[2]The Honorable Sol Blatt, Jr., Senior United States District Judge, dismissed Defendant "Medical Staff" from this action without prejudice on April 4, 2012. See Doc. 16.

August 30, 2012. Plaintiff did not respond to the Roseboro order and the undersigned, on October 12, 2012, issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. On October 30, 2012, Plaintiff filed a response in which he states he wishes to proceed with his case.

## STANDARD OF REVIEW

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do."

2

Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

## DISCUSSION

Plaintiff alleges that his Eighth Amendment rights were violated. He states that he hurt his back on August 14, 2011, when he slipped and fell on stairs at TCI. Plaintiff appears to allege that Defendants were deliberately indifferent to his medical treatment because it was three weeks before an x-ray was taken of his back. On December 16, 2011, Plaintiff went to TCI medical complaining that his vision was blurry and his head hurt. Plaintiff alleges that after medical personnel checked his blood pressure and pulse, he was told to go back to his dorm. Plaintiff claims he fell on the TCI yard, first responders took him to a holding cell, and he stayed there for approximately six hours without medical attention. Plaintiff also makes vague complaints concerning his going to the hospital

3

for five days for surgery after he experienced stomach pains. He claims he was written up on the day he was sick for inciting or urging a group to cause a disturbance. Plaintiff also complains that he was not on any medication while he was "on the street," but is now on many medications and had an allergic reaction to one of his medications. He claims he should not be made to suffer so much as he is only twenty-four years old. Plaintiff requests forty million dollars in damages.

Defendant SCDC contends that its motion to dismiss should be granted because it is entitled to Eleventh Amendment immunity. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff failed to exhaust his available administrative remedies; (2) they are entitled to Eleventh Amendment immunity; (3) they are entitled to qualified immunity; (4) Defendants cannot be held liable on a theory of respondeat superior; (5) Plaintiff fails to show that his Eighth Amendment rights were violated with regard to his medical care or treatment; (6) Plaintiff's allegations of negligence are not actionable under § 1983; and (7) any state law claims are barred by the South Carolina Tort Claims Act.[3]

1. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff's claims are barred because he failed to exhaust his available administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison

---

[3]Plaintiff only appears to have asserted claims under § 1983. To the extent he has alleged any state law claims, it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed because Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed below).

4

Litigation Reform Act's, 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action. See Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d at 677, see also Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled on other grounds by Porter v. Nussle, 534 U.S. 516, 532 (2002); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999)(An inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of

corrections before filing a federal lawsuit under section 1983.); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Plaintiff's claims should be dismissed because he failed to exhaust his available administrative remedies. Michele White, an Inmate Grievance Administrator for SCDC, provided copies of three Step One grievances filed by Plaintiff. See White Aff. and Attachments. Only after completing both Steps 1 and 2 of the SCDC grievance policy has an inmate properly exhausted his claims under § 1983. See Malik v. Ward, No. 8:08-1886-RBH-BHH, 2010 WL 1010023, at *6 (D.S.C. Feb. 4, 2010). In his Complaint, Plaintiff checked boxes stating that he filed a grievance concerning the claims that were raised, stated that he did not get a response, and wrote that the grievance number was "N/A." He also checked that he had received a final/agency/departmental/institutional answer or determination concerning his grievance. Plaintiff attached copies of "Request to Staff Member" forms to his Complaint, but has provided no copies of grievances and nothing to show that he exhausted any grievance concerning the alleged matters. Additionally, Plaintiff has presented nothing to dispute Defendants' contention that he failed to exhaust his available administrative remedies. Even if Plaintiff can show that he exhausted his available administrative remedies prior to filing this action, summary judgment should be granted to Defendants for the reasons discussed below.

2. Medical Claims

Plaintiff appears to allege deliberate indifference to his medical needs because of a three-week delay in getting an x-ray after his August 14, 2011 fall; refusal of medical treatment on

December 16, 2011; concerns about his stomach surgery; and general medical treatment concerns. Defendants contend that they are entitled to summary judgment because Plaintiff has made no allegations against them with the possible exception that he may have alleged that Dr. Drago committed malpractice (he alleges "[t]he Dr. here is doin[g] improper malpractice" - Complaint at 4). They have provided copies of Plaintiff's medical records which they contend show that Plaintiff was given timely and professional care. Warden Knowlin also asserts that Plaintiff failed to make the required showing as to a claim against him as he is a non-medical prison employee. Defendants contend that there is no evidence that they disregarded any of Plaintiff's serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

7

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Defendants have provided copies of Plaintiff's medical records indicating that he regularly received medical care for his complaints. On August 14, 2011 (the day of Plaintiff's alleged fall on steps), Plaintiff was seen by a registered nurse at TCI medical. Plaintiff complained that he fell on steps, hit his back on a step, and twisted his right foot. He was diagnosed with sprains, told to elevate his foot/ankle, and given Ibuprofen. On August 15, 2011, a nurse noted that there were no bruises, abrasions, or broken skin on Plaintiff's back; his range of motion of his waist was within normal limits; and he walked with a slight limp. On August 19, 2011, no visual injury to Plaintiff's back was noted, although there was some tightness and spasm. Chlorzoxazone was given to Plaintiff for muscle spasm and he was diagnosed with musculoskeletal discomfort. X-rays of Plaintiff's lumbar spine were taken on August 25, 2011. They were within normal limits and showed no acute process. It was noted that Plaintiff could almost touch his toes on August 31, 2011. Prednisone was prescribed for Plaintiff's back condition on September 13, 2011. On September 20, 2011, it was noted that Plaintiff's gait was steady, he was able to bend at his waist without difficulty, he had been noncompliant with his prescribed Prednisone, and he had Naproxen. On September 21, 2011, Plaintiff was noted to be walking very well, his lower extremities were within normal limits, and he was able to touch his toes. On October 26, 2011, Plaintiff's gallbladder was removed and he received follow up care. Plaintiff received a consultation at the University of South Carolina's

Department of Neurology on November 11, 2011. On November 29, 2011, an MRI of Plaintiff's lumbosacral and lower thoracic spine were normal.

On December 16, 2011, Plaintiff appeared at SCDC Health Services at TCI with no order to report and without being called by medical. He complained that he felt dizzy and his vision was blurred. Plaintiff was allowed to come into medical and his pulse (82), respiration (20), oxygen level (99%) and blood pressure (110/70) were assessed. It was noted that Plaintiff's color was good, his gait was steady, he had no eye tearing, and he no longer had complaints of his eyes bothering him or dizziness. After Plaintiff was told that his vital signs were normal and that he did not seem to be in any distress, he told medical personnel that he would "just go outside and fall down on the ground and then he would get the attention of everyone." Plaintiff left medical at 10:25 a.m. and first responders were called at 10:33 a.m. Plaintiff was on the ground and he stated his vision was blurred. After being told by an officer to get off the ground, Plaintiff responded. Medical on the scene found that Plaintiff was still in no distress. It was noted that Plaintiff was escorted to a holding cell and would be charged with malingering and disrupting the shift due to his misuse of medical services. On December 28, 2011, Plaintiff was given an analytical eye examination in which his vision was noted to be 20/200 on the right, 20/200 on the left, and 20/70 with both eyes. An order for Plaintiff to report for a vision recheck was issued, but Plaintiff said he was "good" and did not need the recheck. On December 28, 2011, it was noted that neurology felt that no other treatment was needed and that Plaintiff had a long history of malingering. On January 5, 2012, Plaintiff returned from a consultative appointment with orthopedics with recommendations that he obtain non-steroidal anti-inflammatory medications from primary care and be discontinued from the orthopedic clinic. See Defendants' Motion for Summary Judgment, Ex. 1 (Plaintiff's SCDC Health Records).

To the extent Plaintiff alleges a claim due to a delay in treatment, he fails to show that the delay resulted in some substantial harm or that it created a substantial risk of serious harm of which Defendants were aware. See, e.g., Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. 2008)(Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993)(same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990)(same). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004)("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware]."). Plaintiff has presented nothing to show that any delay in treatment caused him harm. Review of his TCI medical records fails to reveal any substantial harm from any delay in treatment.

3. Disciplinary Charge

Plaintiff may be attempting to challenge his January 2012 disciplinary conviction for inciting/creating a disturbance. Defendants provide that as a result of the December 16, 2011 incident, Plaintiff was charged with Inciting/Creating a Disturbance because the first responder was called as a result of Plaintiff's behavior and all movement on the yard had to be stopped. See Defendants' Motion for Summary Judgment, Exs. 2 and 3. After a hearing on January 10, 2012, Plaintiff was found guilty of the charges, lost 60 days of good-time credits, and lost 180 days of privileges (property, canteen, phone, and visitation). See Defendants' Motion for Summary Judgment, Ex. 3 (Disciplinary Report and Hearing Record). Any claims concerning these

11

disciplinary proceedings are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits).

    4.    Falls/Negligence

Plaintiff may be attempting to allege claims of negligence as to his August and December 2011 falls. Defendants Drago and Knowlin contend that Plaintiff fails to provide any evidence that they were present at the time of the alleged falls or that they in any way caused or contributed to the alleged falls. They further contend that any such claim is founded on negligence, which is not actionable under § 1983.,

Plaintiff has not made any allegations that Defendants were present at the time of the alleged falls or caused or contributed to them. To the extent Plaintiff alleges negligence concerning these incidents, his claims fail because negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 238-36 & n. 3 (1986); Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir. 1987); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995).

    5.    Respondeat Superior

Defendants Knowlin and Drago contend that Plaintiff fails to allege any claims against them and that they cannot be held liable under a theory of repondeat superior. Plaintiff cannot show that Defendants Knowlin or Drago are liable under a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal

action. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982).

     6.    Immunity

Defendants appear to contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendant SCDC's motion to dismiss (Doc. 21) be **granted** and that Defendants' motion for summary judgment (Doc. 36) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

November 2, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).